In re Joseph D. KLEVORN, Debtor.

Bankruptcy No. 94–62536.

United States Bankruptcy Court,
N.D. New York.

March 9, 1995.

James Selbach, Syracuse, NY, for debtor.

Mark W. Swimelar, Chapter 13 Trustee, Syracuse, NY.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter is before the Court by way of an objection filed by the Chapter 13 trustee, Mark W. Swimelar, Esq. ("Trustee"), on November 22, 1994. Trustee seeks a denial of confirmation of the Chapter 13 plan ("Plan") of Joseph D. Klevorn ("Debtor"), as well as a dismissal of Debtor's case. The hearing on confirmation of the Plan was initially held on November 30, 1994, in Utica, New York, and adjourned to January 4, 1995, and again to January 25, 1995, to afford the parties an opportunity to file memoranda of law. The matter was submitted for decision on January 30, 1995.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(2)(A) and (L).

## FACTS

The Debtor filed a voluntary petition ("Petition") seeking relief pursuant to Chapter 13 of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") on September 16, 1994. Included with the Petition was the Debtor's proposed Plan which provides for a single monthly payment of $1,085. In Schedule "D" of the Plan, the Debtor lists one secured creditor, Mellon Mortgage Company ("Mellon"), with a claim in the amount of $123,000.[1] According to the Petition, Mortgagee has a lien on rental property located in Wilmington, Delaware ("Delaware Property") and valued by the Debtor at $127,000 (see Schedule "A" of the Petition). Pursuant to the terms of the Plan, the Debtor is to surrender the Delaware Property to Mortgagee in full satisfaction of its claim. According to ¶ 2(b) of the Plan, Mortgagee's "failure to object to the confirmation of this plan shall constitute a waiver of the right of [Mortgagee] to file a claim in this case." At the hearing, the Trustee alleged that he had had a conversation with the attorney representing the Mortgagee who indicated that he would not be filing an objection to the Plan's confirmation.

In his Petition, the Debtor lists one creditor as holding an unsecured, nonpriority claim, namely, Century 21 Irwin Real Estate ("Century 21"). As set forth in Schedule "F" of the Debtor's Petition, Century 21 is owed $981.04 for real estate commissions in connection with the sale of real property in Mexico, New York, to the State of New York in August 1994. Debtor's Plan provides for a 100% dividend to the unsecured creditor

1. A proof of claim was filed by First Union Bank ("First Union") on November 16, 1994, indicating that the Debtor owed approximately $18,424.80 in arrears on First Union's mortgage and that the payoff balance on the mortgage was approximately $135,016.66. Attached to First Union's proof of claim is a form dated November 10, 1994, indicating that payment on the mortgage is to be made payable to "Mellon Mortgage Company." By Order of this Court dated January 4, 1995, the automatic stay was terminated so as to allow First Union to continue with its foreclosure action in Delaware. There appears to be no dispute that First Union currently holds the mortgage on the Delaware Property. For purposes of this decision, Mellon and First Union will be referred to as "Mortgagee."

which is to be paid out of the single monthly payment to the Trustee.

## ARGUMENTS

In opposing confirmation of the Plan and seeking to have the case dismissed, the Trustee makes the argument that the Debtor is attempting to manipulate the Code. The Trustee asserts that the Plan discriminates between the treatment afforded the unsecured claim of Century 21 and that of the Mortgagee's potential deficiency claim. The Trustee contends that the Debtor is solvent and has the ability to pay any deficiency that may occur upon foreclosure of the Delaware Property over a period of 36 months. The Trustee also raises questions regarding whether the Petition was filed in good faith.

In response, the Debtor directs the Court's attention to the fact that neither creditor has filed an objection to the proposed treatment of its claim. Debtor contends that there is nothing in the Code that mandates that a Plan provide for payments over at least 36 months. Furthermore, the Debtor asserts that the Petition was filed in good faith for the purpose of paying off the single unsecured creditor and discharging any deficiency that might arise following foreclosure of the Delaware Property. Debtor argues that whether or not there is a deficiency is a matter of speculation at this point and is not a basis for asserting that the Plan discriminates in its treatment of two unsecured claims since there may only be one such claim.

## DISCUSSION

In light of the fact that the Mortgagee has filed no objection to the Plan's confirmation and allegedly is not seeking a claim for any possible deficiency that may occur from the sale of the Delaware Property, it is the view of this Court that any argument regarding discriminatory treatment of unsecured claims is inappropriate and certainly does not constitute a basis for denying confirmation of the Debtor's Plan at this time.

The Court in the alternative focuses its discussion on whether to deny confirmation of the Debtor's Plan pursuant to Code § 1325(a)(3) or dismiss the Debtor's case pursuant to Code § 1307(c). Both necessitate a determination of whether the Debtor has acted in good faith. Code § 1325(a)(3) requires that a Chapter 13 plan be filed in good faith. In addition, the courts have held that the lack of good faith in filing a Chapter 13 petition is "cause" for dismissal pursuant to Code § 1307(c). *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994), citing *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *In re Gier*, 986 F.2d 1326, 1329 (10th Cir.1993); *In re Powers*, 135 B.R. 980, 990 (Bankr.C.D.Cal.1991). Nowhere in the Code is "good faith" defined. *In re Ramji*, 166 B.R. 288, 290 (Bankr.S.D.Tex. 1993). It is viewed as a "juridical tool of remarkable flexibility", however, by which the Court measures intent. *In re Heard*, 6 B.R. 876, 883 (Bankr.W.D.Ky.1980).

The courts generally apply the same standards in evaluating whether a petition has been filed in bad faith or whether a plan has been proposed in bad faith. *Eisen, supra*, 14 F.3d at 470, citing *Powers, supra*, 135 B.R. at 994; *Gier, supra*, 986 F.2d at 1329. To ascertain the existence of bad faith the courts examine the totality of the circumstances in determining whether the debtor " 'misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner.' " *Eisen, supra*, 14 F.3d at 470 (quoting *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982)). The fact that the Debtor is solvent does not preclude his seeking relief under the Bankruptcy Code. *See In re Kjellsen*, 155 B.R. 1013, 1023 (Bankr.D.S.D.1993) (Any ability the debtor has to repay debts in whole or in part does not constitute "cause" under § 1307(c) to dismiss a case.). Furthermore, while Code § 1322(d) prohibits a debtor from proposing a plan which provides for payments over a period that is *longer than 3 years* without court approval, there is nothing in the language to prevent a debtor from proposing a plan which is for a period that is less than 3 years as long as the debtor is acting in good faith. The case cited to by the Trustee for the premise that plans of a short duration are to be considered a manipulation of the Code, namely *In re Norman*, 162 B.R.

581 (Bankr.M.D.Fla.1993) is inapplicable to the matter herein. In *Norman*, the debtor proposed payments over 36 months, rather than 60 months, on unsecured debt to the IRS amounting to $86,447.02. Debtor proposed to pay only 21% of the debt, which had been rendered dischargeable as a result of the debtor's delay in filing his tax returns. The Debtor in the matter *sub judice*, while proposing only one payment, intends to pay the unsecured creditor in full.

■ Technical compliance with the Code in and of itself is insufficient to establish good faith, however. *Id.* at 582–83 (citations omitted). There must also be some assurance that the debtor who has invoked the reorganization provisions of the Code does so with the purpose of accomplishing the aims and objections of bankruptcy philosophy and policy. *In re Chase*, 43 B.R. 739, 745 (D.C.Md.1984); *see also In re Carver*, 110 B.R. 305, 308 (Bankr.S.D.Ohio 1990) (Good faith requirement obliges the debtor to commit to the purpose and spirit of Chapter 13—that being rehabilitation and repayment of debt.); *Powers, supra*, 135 B.R. at 992 (Good faith requires an examination of whether there has been any abuse of the provisions, purpose or spirit of bankruptcy law and whether the debtor honestly needs the liberal protection of the Code.).

■ The focus of both inquiries is on "whether the filing is fundamentally fair to creditors, and more generally is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Matter of Love, supra*, 957 F.2d at 1357. Because the two analyses are closely intertwined and because the dismissal of the Debtor's case pursuant to Code § 1307(c) is the harsher of the two remedies should the Court determine there to be a lack of good faith on the part of the Debtor, the Court will rely primarily on cases addressing the filing of the petition. As noted above, the inquiry requires that the Court examine the totality of the circumstances on a case-by-case basis to determine whether the debtor has shown

an honest intention in filing the petition. *Id.* at 1355; *Powers, supra*, 135 B.R. at 992, 994. The analysis includes consideration of such factors as (1) whether the debtor has few or no unsecured creditors; (2) whether there has been a previous petition filed by the debtor or a related entity; (3) whether the debtor's conduct pre-petition was proper; (4) whether the petition permits the debtor to evade court orders; (5) whether the petition was filed on the eve of foreclosure; (6) whether the foreclosed property is the sole or major asset of the debtor; (7) whether the debtor's income is sufficient such that there is a likely possibility of reorganization; (8) whether the reorganization essentially involves the resolution of a two party dispute, and (9) whether the debtor filed solely to obtain the protection of the automatic stay. *See generally id.*

Applying these factors to the matter *sub judice*, the Court makes the following findings:

As to the first factor, the Debtor has listed only one unsecured creditor with a claim in the amount of $981.04. There is nothing in the Code, however, which requires that a debtor have a specific number of unsecured creditors. *In re Mountcastle*, 68 B.R. 305, 307 (Bankr.M.D.Fla.1986). Code § 109(e) provides that an individual with unsecured debts of less than $100,000 may be a debtor under Chapter 13.[2] The real test is whether the unsecured creditor is bona fide and whether there is a genuine need and ability to perform under the Plan. *Id.*

The Court does not question that Century 21 holds a bona fide unsecured claim. However, it is also clear to this Court that the Debtor has no genuine need to seek the protection of the Code in order to repay this particular debt over an extended period of time. According to the Petition, the Debtor's monthly income exceeds his expenses by an estimated $1,320.[3] Indeed, the Debtor proposes in his Plan to pay Century 21 in full from his single payment to the Trustee of

---

**2.** As Debtor's Petition was filed prior to October 22, 1994, the $250,000 ceiling on unsecured debts for Chapter 13 eligibility set forth in the Bankruptcy Reform Act of 1994 is not applicable.

**3.** For purposes of this decision, the Court need not address whether or not the Debtor's expense figures are inflated, as suggested by the Trustee.

$1,085, the balance being used to pay the Trustee's fees.

The Court's analysis requires that it address the other factors as well. With respect to the second factor, there is nothing in the record to indicate that the Debtor has filed a previous petition. Nor is there anything to suggest that the debt arose out of any improper or fraudulent acts of the Debtor prepetition. As to the fourth factor, the Court has not been presented with any evidence that the Debtor is attempting to evade any court order. Furthermore, there is no evidence that the Mortgagee had commenced any foreclosure action prior to the Debtor's filing his Petition. It does not appear that the Petition was filed to obtain the protection of the automatic stay. In fact, the Debtor filed no opposition to the Mortgagee's motion to lift the stay. According to the terms of the Plan, the Debtor is voluntarily surrendering the Delaware Property to the Mortgagee. With respect to the seventh factor, there is no question that the Debtor has sufficient income to comply with the payment terms of the Plan. In addition, it does not appear that the Debtor filed his Petition as a means of resolving a two party dispute as was the case in *In re Waldron,* 785 F.2d 936 (11th Cir.1986) (Debtor filed a bankruptcy petition for purposes of being able to reject an option agreement on real property.), a case cited by the Trustee, and in *In re Newsome,* 92 B.R. 941 (Bankr.M.D.Fla.1988) (Debtor filed petition solely for the purpose of getting out of a contract he considered burdensome.)

In examining each of the nine factors, the Court finds itself in somewhat of a dilemma. The weight of the factors favors a finding of good faith on the part of the Debtor in filing his Petition. There is no evidence of any hidden agenda. Yet, the Court has some difficulty rationalizing how a Chapter 13 plan of one month's duration constitutes a "reorganization" of the Debtor. Congress, in enacting Chapter 13, indicated that its purpose was "to enable an individual under court supervision and protection to develop and perform under a plan for the repayment of his *debts* over an *extended period.*" House Report No. 95–595, 95th Cong. & Admin.News, p. 5787, 6079 (emphasis added).

Here there is no proposed repayment of debts over an extended period. Nor do we have any indication that the Debtor is in any way financially distressed and in need of the Court's protection. However, it is not the role of the Court to suggest to the Debtor that other less drastic measures may be available to him. It may be that the Debtor was unsuccessful in seeking to avail himself of other options. In any event, Congress clearly provided a debtor, who seeks to reorganize, with the option of proposing a plan by which he/she may surrender property securing the claim of a creditor. That is exactly what the Debtor did in this case. It is possible that the Petition was filed simply because the Debtor found the Delaware Property burdensome. However, in the absence of any objection by the Mortgagee, the Court is reluctant to dismiss the Debtor's Petition without some proof of fraud or dishonesty. There have been no allegations of inaccuracies in the Debtor's Petition or of any attempt on the part of the Debtor to deceive either the Court or his creditors. The Debtor's plan is explicit in its proposed treatment of both creditors. While the Trustee's attempt to maintain the integrity of the system is certainly commendable, the Court must conclude, based on the evidence before it, that the Debtor filed his Petition in good faith and has proposed a Plan which comes to terms with his creditors and is fundamentally fair in its treatment of them.

Based on the foregoing, it is

ORDERED that the Trustee's motion seeking a denial of the confirmation of the Debtor's Chapter 13 Plan is denied; and it is further

ORDERED that to the extent the Trustee's motion also seeks the dismissal of the Debtor's case, it is also denied.