In re Marcia E. CORNELIUS, Debtor.

Bankruptcy No. 95–60782.

United States Bankruptcy Court,
N.D. New York.

Dec. 5, 1995.

Bodow, Antonucci & Fintel, L.L.P., Syracuse, New York, for Debtor; Wayne Bodow, of counsel.

Bond, Schoeneck & King, L.L.P., Syracuse, New York, for Plaza Health Care; Ellen Kulik, of counsel.

Mark Swimelar, Chapter 13 Trustee, Syracuse, New York.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court considers herein the objection filed by Plaza Health Care Center ("Plaza") on June 22, 1995, to confirmation of the Chapter 13 plan of Marcia E. Cornelius ("Debtor").filed on March 13, 1995, and subsequently modified on or about June 8, 1995. An evidentiary hearing was held on August 31, 1995, in Utica, New York. At the hearing Debtor's counsel made an oral motion pursuant to Rule 9006(c) of the Federal Rules of Bankruptcy Procedure, requesting that the Court consider Debtor's amended plan ("Amended Plan") filed on August 29, 1995, on shortened notice. With the consent of Plaza, the Court granted Debtor's motion, finding that the Amended Plan had been duly noticed to all creditors thereby affected.

Following testimony by the Debtor, the Court provided the parties with an opportunity to file memoranda of law. The matter was submitted for decision on October 2, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(L).

### FACTS

Debtor testified that in 1989 she and her husband, William E. Cornelius, filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") after her husband had his leg amputated and was only able to work sporadically. In January 1991, while the Debtor was making payments pursuant to the Debtors' 1989 Chapter 13 plan, Debtor's husband, who had undergone an amputation of his other leg,

was transferred to Plaza, where he remained until his death in March, 1994.

Plaza is a New York not-for-profit corporation which provides long term daily health and nursing care. It was Debtor's testimony that during the first two months that her husband's resided at Plaza he was ineligible for Medicaid benefits and between her own expenses and payments to the Chapter 13 trustee, she was without sufficient funds to pay Plaza. Debtor testified that she had not made any payments whatsoever to Plaza during the entire period that her husband resided at Plaza.

On or about April 14, 1994, Debtor sought to modify her 1989 Chapter 13 plan to include the post-petition debt owed to Plaza. On May 23, 1994, the Court signed an Order denying the Debtor's motion to modify the plan which proposed to pay a 1% dividend to Plaza. In the Order, the Court made a specific finding that the debtors' discharge would not serve to discharge the debtors' liability to Plaza (see Exhibit "B" of Plaza's Objection, dated June 20, 1995).

Plaza alleges that the Debtor received her discharge in the 1989 bankruptcy case on or about February 8, 1995, and Debtor does not dispute the allegation. On March 13, 1995, Debtor again filed a petition ("Petition") seeking relief pursuant to Chapter 13 of the Code (see Plaza's Exhibit "A"). In her Petition Debtor listed only two creditors. Anchor Savings Bank ("Anchor") was listed as holding a claim of $9,147.53, secured by the Debtor's 1984 Redman Mobile Home. At the time of filing her Petition, Debtor was allegedly current on her payments to Anchor and the Amended Plan makes no provision for payment to Anchor. Plaza, the only unsecured creditor listed in the Debtor's Petition,

was listed as holding a disputed claim in the amount of $26,652.72.

According to the original plan filed with the Petition, Debtor proposed to make monthly payments of $352.34 over a period of 36 months for a total payment to the Trustee of $12,684.24. The original plan provided that Plaza was to receive approximately $10,110.29, for a dividend of less than 36%. However, on June 8, 1995, the Debtor filed an Amended Schedule E, adding the unsecured priority claim of the Madison County Department of Social Services ("MCDSS") in the amount of $1,381.44.[1] According to the Debtor's modified plan filed with the Amended Schedule E, MCDSS is to receive full payment of its claim, and as a result, the amount to be distributed to Plaza was reduced to $8,728.85, for a dividend of less than 31%. The Amended Plan now before the Court proposes that the Debtor lower her monthly payments to $320.00 per month, for a total payment to the Trustee of $11,520. Under the terms of the Amended Plan, Plaza will receive approximately $7,572.96, for a dividend of less than 27%.

Debtor has been employed as a registered nurse at St. Joseph's Hospital in Syracuse, New York, for more than 22 years. According to the Petition, in 1994 she earned $45,266.45. According to Schedule I of Debtor's Petition, she estimates gross income of $3,566 per month or $42,792 per year. In addition, Debtor receives $429 per month in Social Security Income on behalf of her 7 year old daughter, Kathryn. Debtor lists $1,224.00 in payroll deductions on Schedule I. The biweekly payroll deductions include $70.00 deposited into the Debtor's credit union account ("Credit Union Account")[2] and $24.00 deposited into Debtor's 401k retirement plan ("401k Account").[3] Debtor testi-

1. The Court previously rendered a decision on December 26, 1991, granting MCDSS relief from the automatic stay so that the state court could determine Debtor's liability for reimbursement of Medicaid payments made by MCDSS on behalf of her husband. MCDSS, however, was prohibited from enforcing any judgment obtained in state court against the Debtor during the pendency of the debtors' 1989 case.

2. The Credit Union Account is allocated between regular savings, Christmas account and vacation account. As of June 30, 1995, the Debtor had

$166.22 in the savings account (although Debtor testified that as of the date of the hearing there was only $5.00 in the account as she had to purchase new tires in order to attend the hearing); $767.56 in her Christmas account, and $80.76 in her vacation account (see Debtor's Exhibit 21).

3. Although Debtor's counsel disputes that the payroll deductions include the deposits to the Credit Union Account and the 401k Account (see Memorandum of Law filed on behalf of Debtor on October 4, 1995), a review of the Debtor's pay

fied that neither the Credit Union Account nor the 401k Account were listed in her Petition as assets although she had provided her attorney with the pay stubs listing the deductions and deposits into the respective accounts. She also acknowledged that she has a retirement account with Prudential Insurance Company of America ("Retirement Account") with a balance of $3,458.25, as of March 31, 1995, which also was not listed in her Petition (*see* Debtor's Exhibit 23). It was the Debtor's testimony that funds in the account are not available to her until retirement.

According to Schedule I, the Debtor's total monthly income, after deductions, is $2,771.00. Debtor's Schedule J lists various expenses for herself and her daughter totalling $2,451.00. According to the Amended Petition, she proposes to make monthly payments to the Trustee of $320.00 over a period of 36 months.

Plaza objects to the confirmation of the Debtor's Amended Plan pursuant to Code § 1307(c) and § 1325(a). Plaza contends that both the Debtor's Petition and Amended Plan have not been filed in good faith. Plaza asserts that Debtor's sole purpose for filing the Petition was to discharge her debt to Plaza. Accordingly, Plaza requests that the Debtor's Petition be dismissed or in the alternative that the Debtor's Amended Plan be denied confirmation.

Plaza argues that not only has the Debtor failed to include the Credit Union Account and the 401k Account and the Retirement Account in her Petition, but she also failed to list the life insurance proceeds she received in April, 1994, following the death of her husband. According to Debtor's Exhibit 24, she received $7,630.12 in life insurance proceeds. In addition to paying various telephone bills incurred by her husband while a resident at Plaza, she spent approximately $2,500 in funeral expenses (*see* Debtor's Exhibit 24). Debtor testified that other than the funeral expenses, she could not recall how she had spent the balance of the proceeds.

Plaza also contends that the deposits made to the Credit Union Account and the 401k Account are not reasonable and necessary for the maintenance and support of the Debtor and her daughter and should be included in the Debtor's disposable income as defined by Code § 1325(b)(2)(A). Plaza also questions approximately $782.00 in what it describes as "discretionary expenses" listed by the Debtor in Schedule J for home maintenance, recreation, cable television, transportation, miscellaneous expenses, clothing, and school and work supplies (*see* Debtor's Exhibit 48). In connection with the various expenses listed in Schedule J, Debtor admitted that she had not altered her lifestyle since her husband first became ill sometime in 1990. She did enroll her daughter in parochial school while her husband was ill, and according to Schedule J, $95.00 per month has been allocated for tuition and $17.00 per month for her daughter's extracurricular activities, including piano and dance lessons provided by the school. The school also provides daycare services to the Debtor's daughter before and after school for an additional monthly charge of $200.00.

### DISCUSSION

At the conclusion of the evidentiary hearing, the Court suggested that rather than focus on whether or not the Debtor's expenses were reasonable and necessary for the Debtor's maintenance and support, that the parties provide the Court with law on the issue of whether the Debtor should be allowed to deduct the monies being deposited into the Credit Union Account and the 401k Account, or whether the monies should be included in Debtor's disposable income and made available to Plaza.

Code § 1325(b)(1) provides that if an unsecured creditor objects to confirmation of a plan, the Court may not approve the plan unless the creditor receives property of a value not less than the amount of its claim or the plan provides that all of the debtor's projected disposable income is applied to

stubs for 1995 makes it clear that said deductions are included in the figure listed in Schedule I

(*see* Debtor's Exhibit 21).

make payments under the plan. Code § 1325(b)(2) defines "disposable income" as that "which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor."

▉ In this case, Plaza, as an unsecured creditor, has filed an objection to the confirmation of the Debtor's Amended Plan. Since the Debtor does not propose to pay Plaza the full value of its claim, the Debtor must establish that all her disposable income is being applied to make payment under the Amended Plan. Debtor concedes that "contributions to pension plans and/or savings plan [sic] are improper for a debtor in a chapter 13 plan" and as long as the contributions are not mandatory, they should be included in the Debtor's income. *See* Debtor's Memorandum of Law, filed October 4, 1995. Caselaw supports this view. *See e.g. In re Festner*, 54 B.R. 532, 533 (Bankr.E.D.N.C.1985) (Contributions to a voluntary retirement program may enhance a debtor's financial security but "the debtor is not entitled to acquire them [pension plans] at the expense of unpaid creditors."); *In re Fountain*, 142 B.R. 135, 137 (Bankr.E.D.Va.1992) (Contributions to a pension fund constitute disposable income.). *In re Cavanaugh*, 175 B.R. 369, 373 n. 3 (Bankr.D.Idaho 1994) (Voluntary contributions to retirement plans are not necessary for the maintenance and support of the debtor and contributions are income for purposes of Code § 1325(b)); *In re Ward*, 129 B.R. 664, 668 (Bankr.W.D.Okl.1991) (Deposits into a savings account in a credit union constituted disposable income.)

▉ While conceding that the contributions to the Credit Union Account and the 401k Account should be included in any calculation of disposable income for purposes of Code § 1325(b), the Debtor argues that the Social Security Income received on behalf of her daughter in the amount of $429.00 per month should not have been included in the Debtor's income as the monies are exempt pursuant to New York Debtor & Creditor Law § 282 and do not constitute property of the estate. A review of the caselaw makes it abundantly clear that Debtor's argument is without merit. Code § 1322(b)(8) expressly provides that a Chapter 13 plan "shall provide for payment of all or part of a claim against the debtor from property of the estate *or property of the debtor.*" (emphasis added). The fact that the property may be exempt under state law does not prevent it from being included as income to the Debtor. *See In re Hagel*, 184 B.R. 793, 797 (9th Cir. BAP 1995). While exemptions in a Chapter 7 case are intended to provide a debtor with the basic necessities of life, in a Chapter 13 case a debtor is allowed to keep all his/her assets, whether or not they are exempt. *Id.* at 796. The debtor is permitted to retain sufficient income to meet reasonable and necessary expenses in exchange for the repayment of debts out of future disposable income, including income from an exempt source. *Id., see also In re Minor*, 177 B.R. 576 (Bankr.E.D.Tenn.1995); *In re Morse*, 164 B.R. 651 (Bankr.E.D.Wash.1994); *In re Schnabel*, 153 B.R. 809 (Bankr.N.D.Ill.1993). Social Security Income, while exempt under state law, is to be incorporated in any projections of future income for purposes of determining disposable income. *See In re Kloberdanz*, 83 B.R. 767, 772 n. 19 (Bankr.D.Colo. 1988) (Social Security Income must be included for Code § 1225(b)(2) "disposable income" purposes.) The Court concludes that the Social Security Income received by the Debtor on behalf of her minor daughter is properly included in the Debtor's calculation of disposable income.[4]

▉ In its objection, Plaza requests not only that the Court deny confirmation of the Debtor's Amended Plan pursuant to Code

---

4. The Debtor has suggested that it may have been inappropriate to include the Social Security Income in Schedule I since the monies are intended to be used for the benefit of her daughter. It is evident from the Debtor's testimony that the monies are being spent in the operation of the Debtor's household for the benefit of herself and her daughter. If the monies are not included in Schedule I, then any expenses listed in Schedule J as being necessary for the maintenance and support of the Debtor's daughter should also be eliminated or reduced to the extent of $429.00/month. These include child care ($200), tuition ($95), extracurricular activities ($17), school expenses ($12), and a portion of the food costs, household maintenance, clothing, cable, recreation, etc.

§ 1325(a), but as an alternative remedy, Plaza also seeks the dismissal of the Debtor's case pursuant to Code § 1307(c), alleging that the Debtor had not filed her Petition in good faith. Although the Court requested that the parties focus on Plaza's request that the Debtor's Amended Plan be denied confirmation on the basis that she allegedly failed to apply all of her disposable income to the payments under the Amended Plan, the Court must also address Plaza's request that the Debtor's case be dismissed.

■ The focus of the Court's inquiry when dismissal pursuant to Code § 1307(c) is sought is on "whether the filing is fundamentally fair to creditors and whether it is fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *In re Klevorn,* 181 B.R. 8, 11 (Bankr. N.D.N.Y.1995) (quoting *Matter of Love,* 957 F.2d 1350, 1357 (7th Cir.1992)). It requires that the Court examine the totality of the circumstances on a case-by-case basis to determine whether the debtor has shown an honest intention in filing the petition. *Id.; see also In re Powers,* 135 B.R. 980, 992, 994 (Bankr.C.D.Cal.1991). The analysis includes consideration of such factors as (1) whether the debtor has few or no unsecured creditors; (2) whether there has been a previous petition filed by the debtor or a related entity; (3) whether the debtor's conduct pre-petition was proper; (4) whether the petition permits the debtor to evade court orders; (5) whether the petition was filed on the eve of foreclosure; (6) whether the foreclosed property is the sole or major asset of the debtor; (7) whether the debtor's income is sufficient such that there is a likely possibility of reorganization; (8) whether the reorganization essentially involves the resolution of a two party dispute, and (9) whether the debtor filed solely to obtain the protection of the automatic stay. *See generally id.*

Applying these factors to the matter *sub judice,* the Court makes the following findings:

■ As to the first factor, Plaza is the only unsecured creditor. There is nothing in the Code, however, which requires that a debtor have a specific number of unsecured creditors. *Klevorn, supra,* 181 B.R. at 11, citing *In re Mountcastle,* 68 B.R. 305, 307 (Bankr.M.D.Fla.1986). Code § 109(e) provides that an individual with noncontingent, liquidated unsecured debts of less than $250,000 may be a debtor under Chapter 13. The real test is whether the unsecured creditor is *bona fide* and whether there is a genuine need and ability to perform under the Plan. *Id.* In this case, Plaza does not deny that it is a *bona fide* unsecured creditor. Furthermore, an examination of the Debtor's income and expenses makes it clear that she is unable to pay Plaza's claim of approximately $26,650 without the benefits afforded to her by the Code.

Admittedly, this is the Debtor's second filing of a Chapter 13 petition.[5] Debtor received a discharge on February 8, 1995, and filed her present Petition on March 13, 1995. While completing the payments under the 1989 plan, she incurred a substantial post-petition debt to Plaza. Unless an entity holding such a post-petition claim against the debtor which is a consumer debt elects to file a proof of claim, the Code does not permit a Chapter 13 debtor to file a claim on the creditor's behalf. *See* Code § 1307(a)(2). It was on that basis that the Court entered its Order on May 23, 1994, denying the Debtor's motion to add Plaza as a creditor and modify the 1989 plan to provide for a 1% dividend to Plaza. Under the circumstances, the Court finds nothing improper in the Debtor now seeking to discharge the debt to Plaza. Although the Debtor did fail to list certain assets in her Petition, the Court accepts her assertion that it was inadvertent and certainly does not rise to a level requiring that the Court dismiss the Debtor's case. Furthermore, Debtor's filing of her Chapter 13 Petition was not in response to any action on a creditor's part to foreclose on the Debtor's property. In fact, it would appear that the Debtor is current with the payments to her only secured creditor. In addition, there is no evidence that the Debtor has evaded any

---

**5.** Plaza alleged in its objection that "upon information and belief" the Debtor had filed for bankruptcy on three separate occasions (*see* ¶ 22 of Plaza's Objection, dated June 20, 1995), no testimony was elicited by Plaza that would support this allegation.

orders of this Court. It is also evident, based on the Debtor's schedules, that she has sufficient income with which to successfully reorganize. Indeed, her prior successful completion of her 1989 plan weighs in favor of the Debtor again being able to complete payments under a plan of reorganization.

The weight of the factors favors a finding of good faith on the part of the Debtor in filing her Petition. Congress, in enacting Chapter 13, indicated that its purpose was "to enable an individual under court supervision and protection to develop and perform under a plan for the repayment of his debts over an extended period." House Report No. 95–595, 95th Cong. & Admin.News, p. 5787, 6079. The Court concludes that the Debtor should be given an opportunity to formulate a plan which provides for all her disposable income to be applied to the payments under the plan over a period of three years.

Based on the foregoing, it is

ORDERED that Plaza's motion pursuant to Code § 1307(b) seeking dismissal of the Debtor's case is hereby denied; and it is further

ORDERED that the confirmation of the Debtor's Amended Plan is denied on the basis that it fails to comply with Code § 1325(b)(1)(B), which requires that all of the Debtor's projected disposable income be applied to make payments under the Amended Plan since Plaza has objected to Debtor's proposed treatment of its claim and is not receiving the full value of its claim; and it is finally

ORDERED that Debtor shall file and serve a modified Chapter 13 plan together with a notice of confirmation hearing within thirty (30) days of the date of this Order, or Debtor's case will be dismissed upon separate order submitted by the Chapter 13 Trustee.