In re Michael MANDARINO, Debtor.

No. 801–87252–288.

United States Bankruptcy Court,
E.D. New York.

May 20, 2002.

Patrick J. Sullivan, Lefkowitz, Louis & Sullivan, Jericho, NY, Counsel for the creditor, CSC Holdings, Inc.

Roy J. Lester, Lester & Fontanetta, P.C., Garden City, NY, Counsel for the debtor.

CORRECTED MEMORANDUM OF DE-
  CISION DENYING CABLEVI-
  SION'S OBJECTION TO CONFIR-
  MATION OF DEBTOR'S CHAPTER
  13 PLAN *

STAN BERNSTEIN, Bankruptcy
Judge.

I. Procedural Background.

CSC Holdings ("Cablevision") has objected to the confirmation of the debtor's plan on several grounds. The debtor has replied to the objection. This contested matter has now been submitted for determination by the Court on the pleadings and memoranda of law.

The debtor proposed a plan which commits four years of the debtor's disposable income to pay allowed claims. As one of its grounds for objecting to confirmation, Cablevision alleges that the debtor has violated the fundamental normative standard of good faith by not committing his disposable income for the maximum duration allowed under 11 U.S.C. section 1322(d) of the Bankruptcy Code, namely, five years, when the debtor's liability to Cablevision is dischargeable under 11 U.S.C. section 1328(a), but would not be dischargeable in a chapter 7 case under 11 U.S.C. section 523(a)(6). As an additional indicium of a pattern of bad faith, Cablevision alleges that the debtor negotiated a settlement of Cablevision's claims in a pending federal court civil action which he never intended to perform, and then filed his chapter 13 petition on the eve of further proceedings in the federal district action. Cablevision also further objects to confirmation on the ground that the amount of its allowed unsecured claims exceeds the maximum statutory amount, and, therefore, the plan cannot be confirmed because he is ineligible for chapter 13 relief by virtue of 11 U.S.C. section 109(e).

II. Discussion.

Under the plain language of the Bankruptcy Code, if there is a bona fide objection to confirmation by the trustee or a creditor, the debtor must commit the debtor's disposable income for a full three years under section 1325(b)(1)(B).[1] It is only under section 1322(d) that the court may extend the term for five years for cause shown. If a creditor could force a

---

\* The minor corrections to the previously issued Memorandum of Decision do not entail any material or substantive revisions; therefore, the entry of this Corrected Memorandum shall be deemed effective retroactively to May 14, 2002, and the prior deadlines remain in effect.

1. 11 U.S.C. § 1325(b)(1), "Confirmation of Plan," provides that:
  "If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
  (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
  (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."

debtor to commit his disposable income for a full five years, then section 1322(d)[2] would have so provided. The only way for this Court to show fidelity to each of the salient provisions under chapter 13 is to hold that standing to file a motion extending the term to five years should, as a general rule, be limited to the debtor. In contrasting the differences between a chapter 13 payment plan and payments made in connection with a nondischargeability action in a chapter 7 case, the Court of Appeals in *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1120 (9th Cir. 2000) stated that "the bankruptcy court's employment of a five-year repayment plan would be impermissible under chapter 13." And in *Washington Student Loan Guaranty Association v. Porter (In re Porter)*, 102 B.R. 773 (9th Cir. BAP 1989), *aff'd, In re Porter*, 1990 WL 186111, 1990 U.S.App. LEXIS 20578 (9th Cir.1990), the court stated: "Certainly, the court does not believe that assuming compliance of the confirmation criteria contained in § 1325, debtors should be required by the court, the trustee and any other party to extend their plans beyond three years .... Such a requirement would, in fact, be tantamount to involuntary servitude." (quoting *In re Pierce*, 82 B.R. 874, 883 (Bankr. S.D.Ohio 1987)).

Generally, as a matter of practice, the overwhelming number of confirmed plans with five years in this district are proposed by the debtor because the debtor needs a full sixty months to cure a large prepetition arrearage on a residential mortgage loan. In fact, substantially less than one-third of the plans confirmed in this district are successfully completed when the debtor has committed to a term of five years. Although sometimes the cases are dismissed after confirmation voluntarily because the debtor has been able to sell or refinance his or her mortgaged residence and satisfy the arrearage, a much larger number of cases are dismissed because the debtor has demonstrated an inability after confirmation to manage the combined plan payment and direct payments to the mortgage.

■ Chapter 13 cases are intended to be wholly voluntary. To put the point directly and simply, objections to good faith should not be used to bully debtors into a five-year term or to create a backdoor or end-around the three-year limit of section 1322(d),[3] for this imposes a type of involuntary commitment to a chapter 13 plan that defeats the incentive structure upon which chapter 13 is predicated.

This Court is very reluctant to impose its personal ethical norms in defining good faith in chapter 13 cases as a function of the percentage of payments to be distributed under a plan to unsecured creditors. Findings of bad faith are best limited to a well-defined pattern of serial filings of chapter 13 petitions to "save a home from

---

**2.** 11 U.S.C. § 1322(d), "Contents of plan," provides that

> "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."

**3.** The rationale underlying section 1322(d), expressed in the House Judiciary Committee Report and discussed in 8 Collier on Bankruptcy,¶ 1322.17[1], 15th Edition Revised (Matthew Bender 2002) is: "Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude ..." *See also* Lundin, Chapter 13 Bankruptcy, 3rd Ed., § 194.1 (Bankruptcy Press, Inc.2000) and cases cited therein ("The good-faith cases that apply duration considerations convert § 1325(a)(3) into a weapon.")

foreclosure" when there is no reasonable prospect that a plan can satisfy the criterion of feasibility under section 1325(a)(6). Outside this pattern, the case law on good faith in a chapter 13 case when the debtor seeks to take advantage of the "super-discharge" provision under section 1328(a) is a hopeless morass.[4] Since the Court of Appeals for the Second Circuit has not waded into this morass, there are no compelling precedents in this circuit that require this Court to find bad faith in a super-discharge case. When the law of chapter 13 degenerates into a medieval morality play, nobody is advantaged. Indeed, objections on grounds of bad faith simply add to the costs of legal representation that chapter 13 debtors can ill afford, and defeat the low transaction costs that are the hallmarks of prudent chapter 13 case administration.

The debtor here was accused of buying 45 pirated descrambling devices. Cablevision's goal is to deter persons from selling these devices so that other users can gain access to the programming offered by Cablevision without paying for it.[5] Cablevision devotes its extraordinary resources to developing a case law under the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 605(e), against persons who purchase black-market descramblers in bulk. Under this case law, some courts have adopted a presumption that anybody who buys more units that he or she could use at home must have sold these units to other private parties for their illegitimate use.[6] Moreover, the lower limit of the statutory penalty drawn under the 1996 Act is $10,000 per unit. In the debtor's case, he faced the costs of defending himself from restitutionary sanctions that could have been as much as $450,000[7] as well as possible criminal liability.[8]

Cablevision makes much of the fact that the debtor first negotiated a settlement in the amount of $100,000, most of which was to be paid in a lump sum, next, failed or refused to sign the settlement documents, and then filed a chapter 13 case. It is at least plausible that the debtor had second thoughts and recognized that he could not raise that huge amount of cash to meet the requirements of the settlement. Without more compelling proof of the debtor's intention, Cablevision has failed to meet its burden.

What is troublesome about Cablevision's position in this case is that it puts such a specific price tag on good faith. According to Cablevision's questionable logic, it is not good faith for the debtors to pay their

---

**4.** *See Mason v. Young (In re Young),* 237 F.3d 1168 (10th Cir.2001); *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982) ("the totality of circumstance must be examined on a case by case basis" to determine good faith"); *In re Klevorn,* 181 B.R. 8, 9 (Bankr.N.D.N.Y. 1995), confirming plan which provided for "a single monthly payment of $1,085."

**5.** *CSC Holdings v. Mandarino,* CV No. 01–843 (E.D.N.Y. February 13, 2001). *See* 47 U.S.C. § 553, "Unauthorized Reception of Cable Service" and § 605, "Unauthorized Publication or use of Communications."

**6.** *Cablevision Systems Corp. v. De Palma,* 1989 WL 8165, 1989 U.S. Dist. LEXIS 1087 (E.D.N.Y 1989); *see also International Cablevision v. Sykes,* 75 F.3d 123 (2d Cir.1996), *cert. denied, Noel v. International Cablevision,* 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996).

**7.** See for example, *Cablevision Sys. Corp. v. Muneyyirci,* 876 F.Supp. 415, 426 (E.D.N.Y. 1994), in which the district court awarded "statutory damages in the amount of $ 10,000 per sale, totaling $3,900,000."

**8.** Depending under which subsection of 47 U.S.C. § 605(e) a defendant is found liable, criminal sanctions range from "not more than 6 months" in prison to "not more than 5 years for each violation."

unsecured claims for four years for a total payout of approximately $32,500, but it is good faith for them to pay their unsecured claims for five years, increasing the payout to approximately $41,200. So on a $450,000 contingent unsecured claim, Cablevision is apparently willing to accept an aggregate of plan payments of $2,665, but not $2,116. Under this calculus, it appears that Cablevision's objection has little to do with any pragmatic conception of good faith. On balance, given the plain language of section 1325(a)(3), this Court concludes that the objecting creditor is simply haggling over a $550 increment. An objection based upon a $550 increment is not sufficiently weighty as a mixed issued of fact and law to deny confirmation.

█ Cablevision raises another objection, namely, that the case itself should be dismissed on the basis of violating 11 U.S.C. § 109(e). According to Cablevision, the amount of the claim to which the debtor is prepared to stipulate necessarily renders him ineligible for relief under chapter 13. This is because an allowed $450,000 unsecured claim substantially exceeds the maxim amount of liquidated, undisputed, and noncontingent unsecured claims for purposes of determining eligibility under 11 U.S.C. section 109(e). The statutory ceiling on such liquidated unsecured claims is now $290,525. Again, this objection is unsound. Here is a debtor who has scheduled the claim as disputed, unliquidated and contingent;[9] he also determined at some subsequent date that he could not afford the costs of litigating an objection to Cablevision's $450,000 contingent claim.

As of the petition date, the debtor had not been found liable in the district court civil action. But after the debtor filed his petition, he decided upon the advice of counsel not to object to Cablevision's claim.[10] Of course, as a matter of law, if a proof of claim is not contested, it is deemed allowed.[11] But for purposes of good faith, what does that really mean under the facts and circumstances in this case? It means that the debtor merely consents to the amount without admitting to the validity of the claim. The debtor made explicit the fact that he and his wife did not have the finances to contest the claim, and that they were not admitting liability. Surely, the debtor cannot be forced for the sake of obtaining relief under chapter 13 to waive his privilege against self-incrimination and to admit to criminal liability. In effect, this is a compromising gambit to reduce litigation costs and to put this ugly incident behind him at the cost of committing his and his wife's joint disposable income for four years. This is nothing more than a bankruptcy equivalent of a consent decree in an antitrust action; it surely does not constitute a determination on the merits of the liabili

9. "The caselaw endorses the use of, and in some instances the exclusive use, of the debtor's schedules in determining the amount of qualifying debt for purposes of Section 109(e) eligibility." *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir.1985); *People's Bank v. Winder (In re Winder)*, 171 B.R. 728 (Bankr.D.Conn.1994). The courts stated that this is because the petition date is the "reference point" of both Section 109(e) and the debtor's schedules. *Pearson*, 773 F.2d 751, 756–57; *Winder*, 171 B.R. 728, 731.

10. 11 U.S.C. § 101(5) states that a claim is the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..."

11. 11 U.S.C. § 502(a) states that "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."

ty—indeed, it is exactly contrary. And if the plan were to fail, Cablevision could then prosecute the claim to judgment.

Cablevision's definition of contingency is supported by the Second Circuit which held that a *contingent* claim is one in which the determinative event has not occurred as of the petition date. See *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir.1997) ("A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event"). Thus, courts that adopt this definition go on to say that when the debtor had been sued in state court for intentional personal injury, and the matter is still pending trial, the claim is not contingent because all of the relevant events have occurred before the petition date. In this case, there appears to be no relevant event that has not occurred. However, the Second Circuit also holds that each term of reference to a disputed, unliquidated, and contingent claim must be viewed separately. The pivotal point here is the *unliquidated* character of the claim. The *Mazzeo* court points out: "If the value depends instead on a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." [12] The amount that the debtor owes Cablevision does not stem from a written contract or agreement. There is no "simple computation" this Court can use to fix the amount of the claim. Under 47 U.S.C. § 605, the sanctions range from "$10,000 per unit" to as little as a total fine of $250. Since there was no way to ascertain the amount of the debt as of the petition date, the debt was

clearly unliquidated and disputed, even if noncontingent.

As astutely held by the court in *In re Wittreich*, 1991 Bankr.LEXIS 762, *8 (Bankr.E.D.N.Y.1991), "The requirement that the debt must be liquidated was intended to exclude tort claims, claims for punitive damages and similar inchoate debts." Of course, this reading of the Code has the practical result of permitting someone with possible criminal culpability to seek financial refuge under chapter 13. See also *In re Corino*, 191 B.R. 283, 291 (Bankr.N.D.N.Y.1995) the court held "that despite Debtor's egregious prefiling conduct, namely, her embezzlement scheme," which led to a two year prison sentence, the debtor's proposed chapter 13 plan was confirmed. The court looked to the "totality of the circumstances" to determine if the debtor's conduct showed "a continuum of bad faith."

■ As for its final ground for objection, Cablevision points out that if proven in the federal civil action, its claim would not be discharged, were this a case filed under chapter 7 by virtue of case precedents holding that descrambler box piracy is nondischargeable under section 523(a)(6).[13] That argument, however, assumes that Cablevision will prevail in a plenary trial on the merits. This Court cannot now make a determination about good faith on so uncertain an outcome. After incurring the costs of defending himself in a full-blown trial before the district court, he might obtain a decision in his favor. Or, if found liable, the debtor could conceivably be found to owe far less than the $450,000 asserted in Cablevision's Proof of Claim.[14] Moreover, Congress en-

---

12. *Mazzeo*, 131 F.3d 295, 302 (quoting *United States v. Verdunn*, 89 F.3d 799, 802 (1996)).

13. *In re Cohen*, 121 B.R. 267 (Bankr.E.D.N.Y. 1990).

14. 47 U.S.C. § 605(e)(3)(C)(II)(iii) provides, "In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may

acted a super-discharge provision that says to chapter 13 debtors: "Please feel free to file for relief under chapter 13 even though in a chapter 7 case, you might have to defend against a nondischargeability complaint under 523(a)(6)." Since this is the case, again it makes no sense as a matter of pragmatic statutory construction for a bankruptcy court to sustain an objection to confirmation or to grant a motion to dismiss because the debtor took advantage of a fundamental provision that Congress intentionally enacted for the debtor's benefit.

## III. Conclusion.

For these reasons, the objection of Cablevision is overruled. The effective date of this order will be thirty days from its docketing so that the debtors can make an informed decision upon the advice of counsel whether to amend their plan or defend the inevitable appeal.[15]

SO ORDERED

---

reduce the award of damages to a sum of not less than $ 250."

**15.** It does not need to be said that Cablevision will, as a practical matter, prevail in the end. It will cost the debtors more to defend an appeal of this order than it will to add a fifth year to their plan, and so on grounds of necessity, they will amend their plan to five years.